IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

KISHA YOUNG,

              Plaintiff,

    vs.

JAMES C. PHELAN, SECRETARY OF THE NAVY,

              Defendant.

Civil Action No:

**COMPLAINT**

**(Jury Trial Requested)**

The Plaintiff, Kisha Young, by and through her attorney, Chalmers C. Johnson, hereby makes the following claims and allegations:

## I. JURISDICTION AND VENUE

1.1    This action is brought under Federal statute against a Federal Agency as Defendant, and thus is properly filed in the United States District Court as the Court of original jurisdiction.

1.2    During the events plead herein and currently, the Defendant has been an employer subject to the requirements and prohibitions set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and 42 U.S.C. 1981a, et seq.

1.3    That the Plaintiff, Kisha Young, (hereinafter referred to as "Plaintiff"), is and was, at the times relevant to the allegations in this complaint, an employee of the Defendant.

1.4    Plaintiff has exhausted administrative remedies as to the claims brought herein.

1.5    The claims, in this Complaint, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., are within the jurisdiction of this Court.

1.6    All parties and subject matter herein mentioned are within the jurisdiction of this Honorable Court.

1.7    Plaintiff and Defendant are both located within the Western District of Washington, thus venue is proper in the U.S District Court for the Western District of Washington.

1.8    Plaintiff received a Final Agency Decision issued by the Defendant, dated September 29, 2025 and has commenced this lawsuit within 90 days of September 29, 2025.

## II. FACTS

2.1    Plaintiff hereby incorporates by reference all allegations set forth in paragraph I above as though fully set forth herein.

2.2    Plaintiff is female and African American.

2.3    On or about April 15, 2019, Plaintiff began her employment with the Defendant as a civilian employee at the Puget Sound Naval Shipyard in Bremerton, WA.

2.4    Plaintiff is an African American female.

2.5    Plaintiff worked at NAVSUP FLC Puget Sound Code, 502 as a Material Handler.

2.6    Mr. Armando Acosta (hereinafter referred to as "Acosta") was an employee of the Defendant.

2.7    Mr. Acosta, for a time, was a supervisor over the Plaintiff.

2.8    On or about April 22, 2019, the Plaintiff's first-line supervisor, Mr. Gregory Geyer, asked her to go to Acosta's office to have her CAC card programmed so she could gain access to the main gate and buildings for work.

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

2.9     While the Plaintiff was in Acosta's office, Acosta was staring at her breasts. This made the Plaintiff feel uncomfortable and afraid.

2.10    Soon thereafter, Acosta began winking at the Plaintiff when she passed him in the warehouse where she worked.

2.11    Acosta consistently stared at the Plaintiff's breasts and gazed at her for extended periods of time while she was at work.

2.12    On several occasions, Acosta made sexual, pleasure-like noises at the Plaintiff, such as "oooo" and "awwww" when he walked past her or walked up to her at work.

2.13    Acosta regularly walked up to the Plaintiff's desk at work and made excuses for speaking with her while staring at her chest.

2.14    Kaydra McInnis, an African American female, was an employee of the Defendant and worked with the Plaintiff at NAVSUP FLC Puget Sound Code, 502.

2.15    Ms. McInnis noticed Acosta staring at her breasts and at the Plaintiff as well.

2.16    Ms. McInnis and the Plaintiff reported Acosta's behavior a sexual harassment to a supervisor.

2.17    Mr. Steve Chmielewski is a deputy director for the Defendant.

2.18    On May 29, 2019, the Plaintiff reported Acosta's actions and her discomfort with Acosta to Mr. Steve Chmielewski.

2.19    The Plaintiff specifically advised Mr. Chmielewski that Acosta stared at her chest and winked at her and she was very uncomfortable around him.

2.20    Ms. McInnis was present for this report and reported concerns she had as well about Acosta's actions.

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

2.21    Mr. Chmielewski promised to speak to Acosta about the allegations and assured the Plaintiff that he would take care of the matter.

2.22    On June 6, 2019, soon after the Plaintiff objected to and reported Acosta's sexual harassment to Mr. Chmielewski, Acosta walked up to the the Plaintiff while she was seated at her desk at her workstation.

2.23    Acosta made a high-pitched "awwww" sound and leaned into the Plaintiff while placing his hand on her bra strap on her back.

2.24    As the Plaintiff jumped and turned her head, Acosta started rubbing and groping the Plaintiff's back on her bra strap.

2.25    The Plaintiff winced and tried to pull away from Acosta as he continued to rub the Plaintiff's back and asked her how her training was going.

2.26    Acosta's face was uncomfortably close to the Plaintiff, and she could smell cigarettes on his breath as well as his cologne.

2.27    The Plaintiff was extremely scared and uncomfortable and while Acosta continued his unwanted touching of the Plaintiff, disregarding her attempts to pull away.

2.28    Mr. Terrell Henry, a male employee of the Defendant at the time, saw the sexual assault by Acosta towards Plaintiff while it was occurring, stood up from his work station and began to walk towards them.

2.29    When Acosta noticed Mr. Henry approaching, Acosta stopped rubbing the Plaintiff and groping at her bra strap.

2.30    Acosta then winked at the Plaintiff and walked out the back door before Mr. Henry got to her workstation.

2.31    The Plaintiff had severe anxiety and panic due to Acosta's actions.

2.32   The next day, on June 7, 2019, Acosta called the Plaintiff and Kaydra McInnis, who had also made a Complaint against Acosta, into his office.

2.33   As this meeting, Acosta told the Plaintiff that if she tried to transfer anywhere, he (Acosta) would be called and could say good or bad things about her.

2.34   Acosta told the Plaintiff that she needed to be careful because he (Acosta) was in charge of her direct supervisor, Gregory Geyer, and that he could override anything Mr. Geyer said.

2.35   Acosta told the Plaintiff and Ms. McInnis during this meeting that they were no longer allowed to leave 10 minutes early from work, as the Defendant allowed others to do to avoid traffic on the way home.

2.36   Carla Monroe, an employee of the defendant, a supervisor, and a friend of Mr. Acosta's, was present at the meeting, which lasted approximately 45 minutes.

2.37   The Plaintiff was very distraught that her report of Acosta's behavior approximately a week prior to the meeting and her reaction to Acosta's physical groping the day before had made things worse for her employment situation.

2.38   The Plaintiff was fearful of returning to work.

2.39   On the next business day after the meeting with Mr. Acosta, June 10, 2019, she called and spoke with Mr. John Hornbrook, another supervisor and employee for the Defendant.

2.40   The Plaintiff told Mr. Hornbrook that she was afraid to be around Acosta because of his behavior of winking at her, staring at her breasts, and groping her back.

2.41   The Plaintiff called out of work that day and took leave.

2.42   On June 14, 2019, an investigator came to the Plaintiff's place of employment to collect statements regarding the Plaintiff's complaint.

2.43    While the investigation was ongoing, Acosta continued to stare at the Plaintiff, looked her up and down, and glared at her while she was at work.

2.44    On June 17, 2019, Mr. Steve Chmielewski confronted the Plaintiff at work and advised her that she should not have made a report to Mr. Hornbrook.

2.45    Mr. Chmielewski stated that in the future, the Plaintiff should not report to Mr. Hornbrook and needed to go to him instead.

2.46    This was in spite of the fact that the Plaintiff and Ms. McInnis had gone to Mr. Chmielewski on May 29, 2019 and Acosta's harassment and behavior in response had gotten worse.

2.47    After the Plaintiff's complaint, Mr. Hornbrook stated multiple times to the Plaintiff that "other people" did not have the problems with Acosta that she was complaining about.

2.48    Three out of the three African American females who worked with Acosta, including the Plaintiff, Ms. McInnis, and a custodial employee who worked for a contractor in the building where Plaintiff worked, experienced inappropriate, unwanted sexual behavior from Acosta.

2.49    The Plaintiff understood Mr. Hornbrook's repeated statement that "other people" did not have the problems with Acosta that she was complaining about to mean that people who were not African American women did not have the same problems with Acosta.

2.50    After the investigation into the Plaintiff's sexual harassment complaint began, the Plaintiff's direct supervisor, Gregory Geyer, began complaining that the Plaintiff was "slow" and made condescending comments when she did something properly that she "finally did something useful."

2.51    On June 20, 2019, the Plaintiff reported to Mr. Chmielewski that she did not feel comfortable coming to work and she felt like she was being retaliated against for her earlier reports against Acosta.

2.52    Some of Plaintiff's co-workers began to glare at her at work and socially ostracize her.

2.53    Mr. Chmielewski responded to Plaintiff's complaint by telling her not to take it personally, and that Mr. Geyer was just joking when he called her "slow."

2.54    On June 25, 2019, Kaydra McInnis got into a minor vehicle accident in the parking lot at work while she and the Plaintiff were returning from lunch.

2.55    Ms. McInnis reported the incident to Mr. Geyer, who then immediately informed Acosta.

2.56    Acosta's reaction to the report of the accident was to get upset and "shoo" Ms. McInnis away from the desk where she was sitting with her supervisor.

2.57    Ms. McInnis began crying and both women were visibly upset by Mr. Acosta's conduct.

2.58    Acosta left the office and then returned soon thereafter, snapping his fingers at the Plaintiff and Ms. McInnis and saying, "GO OUT, LET'S GO, MOVE ALONG."

2.59    The Plaintiff met with Mr. Chmielewski and reported to him:

   a)    That she was very uncomfortable at work and very uncomfortable working around Acosta;

   b)    That Acosta's behavior against her was in retaliation for her reports against him.

   c)    The Plaintiff discussed the meeting on June 7th that Acosta had with her.

2.60    Mr. Chmielewski replied to Plaintiff's complaints by stating, "I gotta chew on that for awhile because I'm not sure what happened with that."

2.61    On June 27, 2019, the Plaintiff submitted a written complaint to the Defendant, alleging that Acosta had sexually harassed her and engaged in retaliation against her.

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

2.62   The Plaintiff specifically named Acosta as the perpetrator in the complaint and she requested to be transferred so she would not have to worry about running into him and so she could have a "safe, sexual-harassment free work place."

2.63   Immediately thereafter, on July 1, 2019, the Defendant wrote up a record of counseling against the Plaintiff, accusing her of not being at her work station.

2.64   Within about three weeks of Plaintiff's written complaint against Acosta, the Defendant transferred the Plaintiff to work directly under Acosta with him as her direct supervisor.

2.65   On July 17, 2019, Gregory Geyer informed the Plaintiff that she would be moving to inventory and that Acosta would be her direct supervisor.

2.66   The Plaintiff was extremely distraught and called NAVSUP Inspector General Lisa Bogardus to report that she had been assigned to work under the same person against whom she had made a complaint of sexual harassment and retaliation.

2.67   Ms. Bogardus stated the move was good and that the Plaintiff should give Acosta another chance and if it happened again, the Plaintiff could cross that bridge at that point.

2.68   That same day, July 17, 2019, the Defendant officially assigned the Plaintiff to work with Acosta as her direct supervisor.

2.69   Thereafter, the Defendant reassigned Mr. Acosta's so that he was not Plaintiff's direct supervisor.

2.70   Plaintiff and Acosta continued to be assigned to the same work area.

2.71   When Acosta saw Plaintiff, he continued to wink and/or smirk at her.

2.72   The Plaintiff continued to have anxiety, panic, and distress over her work environment.

2.73   The Plaintiff sought medical care from her doctor. She was pregnant and was scared for her herself and her pregnancy.

2.74    On one occasion, on September 12, 2019, Acosta started rubbing another female employee's shoulders in front of the Plaintiff and then put his hand on the other female employee's back, till it rested right above her bottom.

2.75    After that employee turned away to leave, Acosta looked at the Plaintiff and smirked and then chuckled as he walked away.

2.76    The Plaintiff suffered anxiety and frustration, as she felt as if Acosta was taunting her that he had gotten away with his behavior and there was nothing she could do about it.

2.77    The Plaintiff had severe anxiety over going to work and cried at work almost every day around the September October time period.

2.78    Due to the Plaintiff's severe ongoing anxiety, she continued to have difficulty going to work and sought medical treatment over her concerns about herself and her pregnancy.

2.79    The Plaintiff's pregnancy became more difficult due to her stress and anxiety and her doctor recommended that she limit her time at work to reduce risk to herself and her baby.

2.80    By September of 2019, Plaintiff had applied for approximately 70 jobs in an attempt to transfer to an employment position away from the physical presence of Mr. Acosta.

2.81    On September 30, 2019, while the Plaintiff was in her assigned work area, Acosta walked by her and winked at her, then laughed as he walked away.

2.82    Plaintiff reported the interaction with Mr. Acosta to the Defendant's EEO investigator.

2.83    Mr. Chmielewski told Plaintiff that he would arrange a meeting where Plaintiff would be asked to confront Mr. Acosta about the incident.

2.84    On October 13, 2019, Defendant allowed Plaintiff to transfer to a job with a different command within the Navy called NAVSUP, in a facility away from where Mr. Acosta worked, called Keyport.

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

2.85    As of October of 2019, Plaintiff was pregnant and having a difficult time, medically with her pregnancy.

2.86    Plaintiff requested leave when she needed to seek treatment for pregnancy, when she was an automobile accident, and on one occasion to attend to her other four small children when issues arose at home.

2.87    Plaintiff provided her new supervisors with medical documentation supporting her requests for leave.

2.88    Plaintiff did not received any warnings or discipline regarding her requests for leave at NAVSUP.

2.89    Ms. Cockrell was an administrative specialist working for the Defendant at NAVSUP in 2020.

2.90    In February of 2020, Ms. Cockrell learned that Plaintiff had made a complaint of discrimination at her last assignment before coming to NAVSUP and called the EEO office to learn the details of the complaint.

2.91    Plaintiff's one year anniversary of employment with Defendant would have been March 4, 2022, and would have qualified her to apply for family medical leave.

2.92    Plaintiff spoke with Ms. Cockrell  and her supervisor about requesting Family Medical Leave protection for the upcoming birth of her child.

2.93    Defendant terminated Plaintiff on March 3, 2020, 24 hours before she would be qualified for FMLA protection for the birth of her child.

2.94    Defendant terminated Plaintiff in retaliation for her having made a discrimination and retaliation complaint and based on her condition as a pregnant woman.

### III. FOR A FIRST CAUSE OF ACTION
### SEXUAL HARASSMENT/ SEX DISCRIMINATON
**In violation of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. 2000 et seq.**

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

3.1.1   Sections I, and II are hereby incorporated, verbatim.

3.1.2   Plaintiff, a female employee of the Defendant, was subjected to unwanted sexual harassment which rose to the level of a sexually hostile work environment.

3.1.3   Plaintiff was subjected to sexual harassment by an employee of the defendant who was a supervisor in the chain of supervision over Plaintiff.

3.1.4   Defendant had full knowledge that Plaintiff was subjected to a sexually hostile work environment and would continue to be subjected to a sexually hostile work environment when it assigned the Plaintiff to work with Mr. Acosta.

3.1.5   While working with Acosta, Plaintiff was subjected to unwanted sexual harassment which was so severe and pervasive that it negatively affected her, emotionally affected her work environment, and rose to the level of a sexually hostile work environment.

3.1.6   Defendant intentionally ignored Plaintiff's continuing reporting activity in which she reported details of the sexually hostile work environment to which she was being subjected to the Defendant and its agents.

3.1.7   Defendant took action to intentionally interfere, cover up, and ignore Plaintiff's attempts to oppose ongoing sexual harassment.

3.1.8   Defendant created the sexually hostile work environment, intentionally subjected Plaintiff to it, and failed to take prompt or effective remedial action.

3.1.9   As a direct and proximate result of Defendant's failure to take prompt and effective remedial action, Plaintiff suffered severe emotional distress.

**IV. FOR A SECOND CAUSE OF ACTION**
**DISCRIMINATON BASED ON RACE**
**In violation of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. 1981, et seq.**

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

4.1     Sections I, II, and III are hereby incorporated, verbatim.

4.1.1   The Plaintiff was one of three African American females who worked regularly with Acosta for the Defendant.

4.1.2   While working for the Defendant, the Plaintiff experienced repeated sexual harassment by Acosta.

4.1.3   The other two African American females working with Acosta experienced similar treatment, including that Acosta would regularly and inappropriately stare at their breasts at work.

4.1.4   Acosta was also openly dismissive and openly degrading and hostile toward the Plaintiff and Ms. McInnis, both young African American females, shooing them away, referring to Ms. McInnis as "this one," and encouraging others such as Mr. Geyer to insult the Plaintiff even when she was working well and to call her "slow."

4.1.5   John Hornbrook noted "other people" did not have the same complaints about Acosta as did the Plaintiff and Ms. McInnis.

4.1.6   The Plaintiff's race was a factor in Acosta's decision to subject her to sexual harassment.

4.1.7   The Plaintiff suffered disparate treatment because of her race, which caused her to be sexually harassed by Acosta.

4.1.8   Plaintiff suffered severe emotional damage and other economic damages as a direct and proximate result of Defendant's unlawful actions and omissions.

### V.     FOR A THIRD CAUSE OF ACTION
### RETALIATION/SEX/PREGNANCY DISCRIMINATION
### In violation of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. 1981, as amended; 42 U.S.C. 2000 et seq.

5.1.1   Sections I, II, III and IV are hereby incorporated, verbatim.

5.1.2   Plaintiff engaged in activity protected by Title VII of the Civil Rights Act of 1964 when she:

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

COMPLAINT FOR DAMAGES - 12

      a)      Repeatedly opposed and reported sexual harassment from Acosta to the Defendant throughout 2019;

      b)      Opposed and reported harassment in May and June 2019 to Mr. Chmielewski;

      c)      Opposed and reported harassment in May 2019 to Mr. Hornbrook;

      d)      Opposed and reported retaliation and sexual harassment to John Hornbrook, Lisa Bogardus, Steve Chmielewski, to the Defendant's investigators, and in written statements and complaints.

5.3.1   Defendant took adverse employment actions against the Plaintiff when:

    a)   Plaintiff was subjected to a sexually hostile work environment while Defendant intentionally ignored her complaints of sexual harassment;

    b)   Plaintiff was written up and her employment was threatened; and

    c)   Plaintiff was transferred to work directly for the perpetrator, Acosta;

    d)   Defendant terminated Plaintiff's employment.

5.3.2   Defendant terminated the Plaintiff's employment based on consideration of the fact that she was pregnant, in violation of Title VII of the Civil Rights Act of 1964, as amended.

5.3.3   The adverse employment actions to which the Defendant subjected the Plaintiff were based on consideration of her sex (female) and race (African American) and in retaliation for Plaintiff's having participated in opposition and reporting activity to past incidents of sex discrimination, which is protected under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. 1981, as amended.

5.3.4   As a direct and proximate result of the Defendant's unlawful acts and omissions, in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. 1981, the Plaintiff:

    a)   Suffered lost wages and benefits associated with her employment;

LONGSHOT LAW, INC.
PO BOX 1575
PORT ORCHARD, WA 98366
(425) 999-0900

COMPLAINT FOR DAMAGES - 13

b)  Will suffer future lost wages and benefits of her employment;

c)  Endured emotional distress; and

d)  Has incurred attorney's fees and costs of pursuing this action.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against the Defendant, for all damages, fees and costs and equitable remedies available under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., and 42 U.S.C. 1981 including special damages, general damages, equitable remedies (including but not limited to front pay in lieu of reinstatement) liquidated damages, and attorney's fees and costs, as authorized by the applicable statutes whether specifically plead or not.

December 16, 2025

*s/ Chalmers C. Johnson*
CHALMERS C. JOHNSON, WSBA #40180
Attorney for the Plaintiff